Good morning. My name is Bennett Roche. I'm the attorney for the appellant in this matter, Lynn Andrade. This case is a somewhat unusual case in that the alleged retaliating official is a woman. And the party being discriminated against or retaliated against on the basis of having filed a sex discrimination claim is a woman. But it arises in the context of a situation where there had been sex discrimination in the facility, in the organization, the contracting organization, 30 cons, that women had complained about that discrimination, that that discrimination had been addressed, that management felt that enough had been done for women, that management felt that anyone, any woman who would continue to complain about sex discrimination in the organization was acting unreasonably. So this is the context in which this case arises. I'm sure the court is familiar with the facts, and I certainly can't address all of them. But in analyzing the court below, I held only that no prima facie case had been established as to either sex discrimination or retaliation. It did not address the evidentiary objections that had been raised by the government. It did not. Therefore, this case, as it is postured here, needs to address or needs to be addressed in terms of the prima facie case, the existence of that. If the court concludes that a prima facie case had been established on either the sex discrimination or the retaliation claims, then a court has to address the non-discriminatory or non-retaliatory defenses that were raised by the government, and then obviously also whether there had been sufficient evidence of pretext with respect to those pretexts for discriminatory or retaliatory motives. I'd like to ask you a question about the retaliation claim. Yes, ma'am. Can you hear me? No, I can't. Okay. There was a considerable period of time that elapsed. I'm sorry. There was about two years between the time of the complaint of discrimination and the acts that your client asserts were retaliatory. Correct. And our case law suggests that a lapse of a long period of time dissipates the inference of retaliation. What evidence is there that in spite of the two years, there is a retaliatory inference that can be drawn here? Well, number one, the official alleged to have retaliated was not my client's, the appellant's supervisor at the time that the claim of discrimination was original claim of discrimination was made, which was based on a non-selection. So in reality, there was no opportunity for this individual, Miss Ryan, to retaliate until the interview and selection process that occurred in May 1997. That would have been the first opportunity. And as a practical matter, when you look at the evidence, and I think you have to look at the totality of the evidence under Reeves versus Sanderson, the fact that Miss Ryan at one point claims that she had no, that she had knowledge of the discrimination complaint, and in fact, the evidence shows that she had the original discrimination complaint and that she had been interviewed in connection with that. And then at a later point of time in a declaration, she says, oh, she changes, she changes her story. And she says, oh, I was I was mistaken. I really didn't know. Now, when you look when you know Reeves versus Sanders, Sanderson compels us to look at the gestalt of facts that that in combination, that inconsistency in her testimony, plus the evidence as to the state of mind of management and the fact that management's view of the appellant was communicated to all the flight chiefs, including Miss Ryan. And the fact that Miss Ryan that the evidence that the flight chiefs went to management for approval of their selections in combination, I think that's enough to distinguish this case from those cases, those simple cases where there is simply reliance alone upon an act of protected activity. And then at some point in the future, not immediately on the heels of that act, but at some point in the future, months or years, as some claimed retaliatory act, it's a very, very different situation. This is really the first opportunity that the individual who was claimed in the original discrimination complaint to be an alleged discriminating official and was interviewed in that. This is the first opportunity, so to speak, for that individual to get even. Counsel, I think we have your position. Would you like to save some time for rebuttal? Yes. Yes, indeed. Thank you, Your Honor. May it please the Court, Assistant United States Attorney Karen Shelton for the Secretary of the Air Force. Your Honors, this case is about plaintiff's opinion that she was better qualified for the contracting specialist position at issue. She's not the only one who had that opinion. Didn't she get a higher score on your client's matrix than the person who was selected? By one point, yes, Your Honor. Isn't that evidence, some evidence that your client viewed her as just a teeny bit better qualified? Your Honor, in this case, all of the candidates that were referred for the position were considered qualified for the position. And the decision maker in this case retained the discretion to select any of them. In fact... That's true, but that's not the question I asked. Your client set up the matrix, and so presumably it reflected your client's own view of how to rank the relative qualifications as well as the The simple question is that for the purpose of summary judgment, doesn't a higher score suggest that your client thought that there was a slightly better set of experiences and so forth? No, Your Honor. I would submit that the matrix does not support that because, in fact, two individuals scored even higher than both the plaintiff and the ultimate selected person, Craig Sweet. So they were even more qualified, but that still doesn't take away from the relative ranking between this individual and the person who was hired or promoted. Your Honor, the fact that Patricia Ryan selected someone who was not the most qualified on the matrix is not evidence that plaintiff was discriminated against on the basis of gender. The two people that scored higher than both the plaintiff and Craig Sweet were both male. And in this case, that actually reinforces the stated reason by Patricia Ryan that there was something unique about Craig Sweet's experience that made him the best candidate for this position. Isn't that a jury argument, though? I mean, the difficulty I have is the procedural posture. If we were here after a jury's verdict in your client's favor, I'm not sure we'd be here at all. But the question is whether there is a triable issue of fact, not whether ultimately you can explain to the satisfaction of a trier of fact. Your Honor, plaintiff still has a burden at the summary judgment stage to produce evidence that she was discriminated against on the basis of her gender or because of her EEO complaint. There is no evidence in this record, a plaintiff has produced no specific or substantial evidence, which is her burden at this point, that the plaintiff's stated reason was not true or that the reason was truly motivated by her gender or the fact that she had filed an EEO complaint. Let me ask you about a different point that goes along the same lines as Judge Graber's question. The plaintiff testifies that or tells us in affidavit that Lieutenant Colonel Kruzmark had said that for somebody to get this job, they had to have a civilian level II certification, and she had that. And at the time of his appointment, Mr. Sweet did not. That's a separate point from the matrix ranking. What do we make of that? Your Honor, a level II certification was not required for this position. Well, I understand that there are various levels of sort of requirements. Some are formal job requirements and some of them are potentially relevant because it's not a part of the formal job description. The plaintiff doesn't get to rely on Lieutenant Colonel's statement as any of her evidence? She can't rely on Colonel Kruzmark's statement as evidence because Colonel Kruzmark didn't make the selection in this case. Patricia Ryan made the selection in this case. And this Court has repeatedly held that the stray remarks of nondecision-makers are not evidence of animus. It's not a stray remark about animus at all. It's a remark about the preferred qualifications for the job, which doesn't have anything to do with discrimination in and of itself. It has to do with what kind of person was best suited for this position. And I guess is there evidence that he had no authority to consider the criteria for that job? I mean, I'm not sure why it is that she can't rely on his statement. Again, Your Honor, Patricia Ryan was the selecting official in this case. There's no evidence that Patricia Ryan was told that a level II certification was required for this job. The only evidence we have is plaintiff's assertion, plaintiff's allegation that Colonel Kruzmark told her it was. What's the chain of command at the base? Where does Lieutenant Colonel Kruzmark stand in relation to Ms. Ryan? I believe Colonel Kruzmark would have been several levels above plaintiff. There were. No, I'm talking about where was Lieutenant Kruzmark in relation to the decision-maker, the defendant Ryan? Is above Patricia Ryan in the overall hierarchy. And how many levels above? I'm not certain of all of them, but at least two. At least two. But the fact that plaintiff's, that Colonel Kruzmark, the person making, allegedly making the statement, and again, we don't have Colonel Kruzmark's testimony in this respect, plaintiff is relying on the plaintiff's allegation. He didn't take that deposition. He certainly could have. And he chose instead to rely on this allegation. Is Lieutenant Kruzmark, Lieutenant Colonel Kruzmark a defendant in this case? No, he's not, Your Honor. Not, okay. Was there an objection made to that? I hear you say objection made to the attribution to Lieutenant Colonel Kruzmark? Yes, Your Honor. And on a related point, and I don't know if my colleagues are done with this area, but even if there were a difference in qualifications, between the stated qualifications and, I'm sorry, let me start over. Even if Ms. Andrade were better qualified by, arguably, another element of the case, obviously, is that there's some evidence of gender discrimination. There is a statement attributed to Mr. Shorey that he was aware of widespread dissatisfaction among female employees. Was that statement objected to as well? Yes, Your Honor. And the district court didn't rule on that objection? That's correct, Your Honor. Was there any other evidence of a hostile environment toward women or differential treatment of women? No, Your Honor, there was not. And that brings me back to the point that I would like to finish to Judge Fletcher's question. The fact that Colonel Kruzmark, who allegedly made this statement, was in the chain of command is not, in and of itself, evidence that this decisionmaker had any knowledge that this was a requirement or made a decision based on this, or that she somehow selected an unqualified candidate. In the case, and I'm thinking of this Court's ---- No, I think what I have in trouble is the definition of evidence. It may be weak evidence. It may be something from which we could draw an inference. But in order to distance yourself from this, you keep saying that there's no evidence. I think this is ---- I think these things are evidence, if admissible, but the problem is, for the plaintiff's side, that there's weak evidence. Your Honor, there are two problems with that statement, one of which is it's not the statement of Colonel Kruzmark. That deposition was never taken and could have been taken, and plaintiff chose not to and chose to rely on this instead. Second, in cases, I'm thinking of this Court's recent decision in Porter, where a supervisor's comments were relevant. There were other circumstances in that case. It's not just ---- I'm also thinking of Odema is another case that I'm thinking  of, simply because someone is in the chain of command. A statement tied to them just because they're in the chain of command is not sufficient to draw an inference of discrimination. In both of those cases, there were other ---- it had, in Odema, for instance, a nondecision maker's supervisor's comment was considered, but the Court there found that that supervisor had actively prevented the plaintiff's application from being considered. So they were actively involved in the decision in that case. It's not the case here. There's no evidence or plaintiff has not produced any evidence that Concruzmark  Kennedy. Excuse me. About the retaliation issue, the plaintiff's lawyer has responded, has said, well, this is the first opportunity for retaliation in response to the question, but, you know, this is about two years. That's a long time. Your response to that? Well, my response to that, again, I'm going to refer the case to the recent decision in Porter where the Court had similarly found that it was the first opportunity for ---- because the alleged harasser had not been in the plaintiff's chain of command. But in that case, there were substantial other circumstances present from which the Court could draw an inference of discrimination. The Court found a pattern of antagonism. That plaintiff had spit in the plaintiff's food. That supervisor had circumvented protocol in denying her transfer request, had made sexual advances to her, that there were substantial specific circumstances in that case that are not present here. And that's how I would distinguish this case. There's simply nothing about the fact that it was the first opportunity, that there was at least three months, possibly six months between the time the plaintiff filed this complaint in 1995 and the time she actually left the base. And we have no evidence of a pattern of antagonism during that period. So you're saying that between the time she filed the 1995 complaint and the time that she left the base? It's at least ---- that point wasn't specifically determined in the record below, but it was at least three months, possibly as many as six months. But the first opportunity to hire or promote or take any type of action on an employment application was this application in 1997, right? This was Patricia Ryan's first opportunity to consider her, consider a plaintiff for a job. But there are no other circumstances. What about the admittedly hearsay testimony about the plaintiff being a troublemaker and that she would never get hired back for anything? Is that another one of the areas where there was an objection that wasn't adjudicated? Yes, Your Honor. We objected to that testimony as well. If we actually look at the statement that is alleged to be attributed to Patricia Ryan, and that statement appears in the excerpts of Revered at page 129, if we actually look at that statement, it's not specific enough from which you conclude that Patricia Ryan called the plaintiff a troublemaker. It says that several people were present. It doesn't identify who said exactly what. It's very ---- it doesn't say that Ryan said this. And it's very possible from that testimony cited by the plaintiff that Patricia Ryan said nothing at all. It's simply not specific enough to draw the conclusion that this was said. And moreover, even if the plaintiff had offered specific evidence that Patricia Ryan had called the plaintiff a troublemaker, and this testimony is not that, it wouldn't establish that she had retaliatory animus because there's nothing about that statement that can be attached to her gender or her EEO claim. We can only speculate as to what the word troublemaker could have meant in that situation. Thank you, counsel. Thank you, Your Honor. Mr. Roth, you have a little less than two minutes left in your time. First of all, with respect to this attitude of Kruzmark, and may I say, in the organization, Kruzmark was the military head. Hooper was the civilian head of the organization. The flight chiefs, one of whom was Pat Ryan, reported to those individuals. So that is the organization, as at least I understand it, Your Honor. Okay. When I took – I took – I participated in this matter when it was at the administrative level, and we had – before the EEOC, and we had a hearing at Vandenberg Air Force Base. And I – at that point in time, I asked Kruzmark, who was under oath, the following. And this appears at pages 136 and 137 of the excerpts of record. And I – and I asked him, I said, okay, so if someone had alleged that they had not been promoted based upon gender under your command, which was under your direction, you would have felt that that kind of assertion, that kind of complaint was unmeritorious. Is that right? Answer. Yes, absolutely, because that's from the dinosaur ages. I mean, you know, the Air Force hasn't done that in years. And that's not part of my philosophy of being a commander. So this is the – this is the – this is the factual ground work, so to speak, on which this – this unusual case arises. There was some suggestion by one of your honors about the weakness of evidence. Okay. There's weakness, certainly, in the assertion by Ryan that the reason for the selection of Sweet was the fact that he had civilian experience. I mean, and that this Procurement Act had recently been passed. It's two and a half – it's two and a half – it was two – it was passed two and a half years before. It was not recent. And anyone can say anything in terms of an – of asserting that there's a legitimate, non-discriminatory, non-retaliatory motivation for an employment action. The question is, in cases like – like these, where there are facts going so many different ways, are these cases to be decided on summary judgment, or are they going to be decided by the prior fact? Counsel, thank you. You have exceeded your time by quite a bit. We appreciate your argument, and I think we understand your position. Thank you, Your Honor. Thanks to both counsel. And the case just argued is submitted.
judges: Graber, W. Fletcher, Fogel